UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

THUNDERBIRD TRADING POST, INC., a
Puyallup Tribal Corporation,

Plaintiff,

v.

U.S. BUREAU OF ALCOHOL, TOBACCO
AND FIREARMS; STEVE HIGGINS,
Director; DOUGLAS K. KROUGH, Special
Agent; AND OTHER AGENTS, names
unknown; U.S. DEPARTMENT OF
JUSTICE; INTERNAL REVENUE
SERVICE; W.D. MALONE, Director;
STATE OF WASHINGTON,
DEPARTMENT OF REVENUE

Defendants.

Case No.  C92-5181RJB

**ORDER GRANTING SUMMARY
JUDGMENT**

This matter comes before the Court on Plaintiff's Motion for Summary Judgment (Dkt. 89-1),

Defendant Washington State Department of Revenue's Motion for Summary Judgment (Dkt. 90-1),

and U.S. Bureau of Alcohol, Tobacco, and Firearms, Steve Higgins, Douglas K. Krough, Other

Agents (names unknown), U.S. Department of Justice, Internal Revenue Service, and W.D. Malone's

"Defendant's Motion for Summary Judgment" (Dkt. 91-1).  The Court has considered the pleadings

filed in support of and in opposition to the motions and the file herein.

## I.    PROCEDURAL AND FACTUAL HISTORY

The undisputed, underlying facts and procedural history are as follows: this lawsuit arises from

a criminal investigation by the Bureau of Alcohol, Tobacco and Firearms ("ATF") into alleged

1  violations of the Racketeering Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961, *et. seq*.

2  ("RICO"), and the Contraband Cigarette Trafficking Act, 18 U.S.C. § 2341, *et. seq* ("CCTA").  Dkt.

3  30.  The ATF alleged that cigarettes were being smuggled from Arlee, Montana to several Indian-

4  owned smokeshops throughout Eastern and Western Washington.  Dkt. 19.  In November of 1991,

5  federal search warrants were obtained for a number of smokeshops in Eastern and Western

6  Washington.  *Id*.  Pursuant to one such warrant, on or about November 23, 1991, ATF agents entered

7  the Puyallup Indian reservation and seized cigarettes, along with cash and other assets from the

8  Thunderbird Trading Post, Inc. ("Thunderbird").  Dkt. 68, at 10-11; Dkt. 89-3, at 2-5.  Criminal

9  proceedings were instituted against Theodore ("Ted") Gord, the manager of Thunderbird, as well as

10  several other defendants in both Washington and Montana.  Dkt. 17.

11         On November 25, 1991, United States Magistrate Judge Cynthia Imbrogno, for the Eastern

12  District of Washington, entered an order directing the United States "to give any contraband cigarettes

13  found during the execution of the search warrants in this case to the State of Washington Department

14  of Revenue" ("Department of Revenue") to market and retain the proceeds "until further order of the

15  Court."  Dkt. 75-3, at 4.  The parties do not dispute that, as perishable items, the cigarettes had to be

16  sold.

17         In April of 1992, the Department of Revenue auctioned approximately 22,465 cartons of

18  unstamped cigarettes seized from Thunderbird.  Dkt. 85, at 2.  The Department of Revenue retained

19  the proceeds and placed the proceeds in various bank accounts in Olympia, Washington.  *Id*.  Some

20  confusion exists as to the amount of the sale proceeds.  The Department of Revenue indicated in its

21  Motion for Summary Judgment (Dkt. 90-1, at 3 n.1) that it mistakenly duplicated pages two and three

22  of Exhibit C (Dkt. 85, at 7-16), and the duplication resulted in the appearance that the auction proceeds

23  totaled $137,501.  Thunderbird, apparently relying on the inaccurate copies, at one point asserts that

24  the amount equals $137,501.  Dkt. 89-2, at 2.  However, Thunderbird had previously indicated that the

25  amount was $118,601.  Dkt. 86, at 2.  The Federal Defendants also relied upon the Department of

26  Revenue's inaccurate number and stated that the amount equaled $111,601 in their summary judgment

27  motion.  Dkt. 91, at 4.  Regardless, the accurate amount of the auction proceeds is not a material issue

28  that must be decided here.

In December of 1991, Thunderbird filed a Claim for Return of Property with the Department of Revenue ("Claim for Return of Property"), initiating an administrative proceeding under which Thunderbird would be given the opportunity to prove it was the lawful owner or had the right to lawful possession of the seized items. *Id.*, at 22.  In May of 1992, Thunderbird filed the original Complaint in this action, naming federal agencies and officials ("Federal Defendants"), but not the Department of Revenue, seeking injunctive relief and the return of the items seized.  Dkt. 1.  The Federal Defendants moved to stay the case, arguing that to proceed with this civil matter would unduly hamper the criminal proceedings.  Dkt. 39.  In November of 1993, this matter was stayed pending resolution of the criminal cases.  Dkt. 38.

In 1994, this Court dismissed the criminal indictment against Ted Gord, the manager of Thunderbird.  *United States v. Gord*, No. 94-cr-05247-RJB, Dkt. 125 (W.D. Wash. Sep. 28, 1994).  The Court, in part, relied upon a decision released a few days earlier by Judge Quakenbush in the related case of *United States v. Brigman*, 874 F. Supp. 1125 (E.D. Wash. 1994).  The *Brigman* decision was not appealed; however, the United States appealed the dismissal of Ted Gord's indictment.  *Gord*, No. 94-cr-05247-RJB, at Dkt. 136.

On appeal, Ted Gord argued that "no taxes were due on the cigarettes he possessed and distributed, because (he claims) the Thunderbird Trading Post was a tribal organization." *United States v. Gord*, 77 F.3d 1192, 1194 (1996).  The *Gord* court, upon analyzing the CCTA and Washington law, rejected Ted Gord's argument, concluding that "under Washington law, all unstamped, unapproved cigarettes are 'subject to seizure[,] . . . tax and penalties,' even if possessed by and distributed to Native Americans." *Id.*  The *Gord* court relied primarily on a related decision, *United States v. Baker*, 63 F.3d 1478, 1487-86 (9th Cir. 1995).  In *Baker*, the Ninth Circuit affirmed the conviction of two of Ted Gord's co-conspirators, rejecting an argument that Congress did not intend the CCTA to apply to Native Americans.  *Gord*, 77 F.3d at 1194.  In making its decision, the *Baker* court found the following: (1) that the CCTA did not impermissibly restrict Indian trading rights guaranteed by the Medicine Creek Treaty of 1854; (2) that unstamped cigarettes transported into Washington without preapproval by the Department of Revenue are "contraband" under Washington law; (3) that mere possession of unstamped cigarettes, even by Indians, is prohibited by Washington law if the cigarettes

1   are not preapproved for tax exemption; and (4) that the cigarettes in this case were contraband under

2   Washington law. *Baker*, 63 F.3d at 1486-87.

3          The Ninth Circuit Court of Appeals subsequently reversed this Court's decision to dismiss Ted

4   Gord's criminal indictment. *United States v. Gord*, 77 F.3d 1192, 1194 (1996).  On remand, Ted Gord

5   entered a plea agreement, and in December of 1996, this Court entered a Judgment in a Criminal Case

6   for conspiracy under RICO, 18 U.S.C. § 1962(d).  Dkt. 85, at 17.

7          During the years of activity in the criminal case, no final action was taken in the pending civil

8   case (Dkts. 36-48), nor was any action taken on Plaintiff's Claim for Return of Property pending before

9   the Department of Revenue (Dkt. 90-1, at 5).  On April 20, 2001, Plaintiff and the Department of

10  Revenue entered into a Stipulation and Order of Dismissal ("2001 Stipulation") before the Appeals

11  Division of the State of Washington Department of Revenue.  Dkt. 75-3.  The 2001 Stipulation

12  dismissed the action with prejudice and stated that "[t]he proceeds from the auction of the seized

13  cigarettes shall remain with the Department of Revenue as ordered by the United States District Court

14  for the Eastern District of Washington until otherwise ordered by the appropriate federal court having

15  jurisdiction over said funds."  Dkt. 75-3, at 2.  As this Court has previously held, it appears reasonably

16  clear from the record that the cigarettes that are the subject of this case are the same cigarettes covered

17  by the 2001 Stipulation.  Dkt. 88, at 2.

18         On February 28, 2005, Plaintiff's Motion to Re-open this case was granted.  Dkt. 52.  Plaintiff

19  added the Department of Revenue as a defendant on May 2, 2006.  Dkt. 68.  On August 16, 2006, the

20  Department of Revenue filed a Motion to Dismiss, arguing that 1) its sovereign immunity barred

21  Plaintiff's claims against it, and 2) the State did not consent to a waiver of immunity.  Dkt. 75-1.  On

22  October 23, 2006, this Court entered an Order granting in part and denying in part the Department of

23  Revenue's Motion to Dismiss.  Dkt. 88.  The Court retained limited jurisdiction over the Department

24  of Revenue.  *Id.*

25         Currently pending before the Court are three motions for summary judgment.  First, Plaintiff

26  moves for summary judgment, seeking an order returning all property seized by Defendants, including

27  the proceeds of the auction of the confiscated cigarettes.  Dkt. 89-2, at 8.  Second, the Washington

28  State Department of Revenue requests that this Court grant summary judgment on the limited claim

against it regarding the proceeds of the sale of contraband cigarettes.  Dkt. 90-1, at 12.  It further

requests that the Court enter an order declaring the auction proceeds forfeit and allow the Department

of Revenue to dispose of the proceeds in accordance with Washington law.  *Id.*, at 13.  Last, the

Federal Defendants request this Court to grant summary judgment in their favor, declaring that

"Plaintiff has forfeited any right to the property."  Dkt. 91-1, at 3.  Further, Federal Defendants ask

that, to the extent Plaintiff "may still be attempting to claim that the [Contraband Cigarette Trafficking

Act] does not apply to an Indian Tribal Organization, or that the Federal officers were without

authority to enter the reservation and seize contraband," the Court dismiss any such claims.  *Id.*

## II.    DISCUSSION

### A.    SUMMARY JUDGMENT STANDARD

Summary judgment is proper only if the pleadings, depositions, answers to interrogatories, and

admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any

material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c).

The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a

sufficient showing on an essential element of a claim in the case on which the nonmoving party has the

burden of proof.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1985).  There is no genuine issue of fact

for trial where the record, taken as a whole, could not lead a rational trier of fact to find for the non

moving party.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)

(nonmoving party must present specific, significant probative evidence, not simply "some metaphysical

doubt.").  *See also* Fed. R. Civ. P. 56(e).  Conversely, a genuine dispute over a material fact exists if

there is sufficient evidence supporting the claimed factual dispute, requiring a judge or jury to resolve

the differing versions of the truth.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 253 (1986); *T.W.

Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

The determination of the existence of a material fact is often a close question.  The court must

consider the substantive evidentiary burden that the nonmoving party must meet at trial—e.g., a

preponderance of the evidence in most civil cases.  *Anderson*, 477 U.S. at 254; *T.W. Elec. Serv., Inc.*,

809 F.2d at 630.  The court must resolve any factual issues of controversy in favor of the nonmoving

party only when the facts specifically attested by that party contradict facts specifically attested by the

moving party.  The nonmoving party may not merely state that it will discredit the moving party's evidence at trial, in the hopes that evidence can be developed at trial to support the claim.  *T.W. Elec. Serv., Inc.*, 809 F.2d at 630 (relying on *Anderson, supra*).  Conclusory, non specific statements in affidavits are not sufficient, and missing facts will not be presumed.  *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888-89 (1990).

## B.   COLLATERAL ESTOPPEL

The Federal Defendants (Dkt. 93) and the Department of Revenue (Dkt. 94) assert that Plaintiff is collaterally estopped from arguing that the seized cigarettes were not contraband.  "The doctrine of collateral estoppel (or issue preclusion) 'prevents relitigation of issues actually litigated and necessarily decided after a full and fair opportunity for litigation, in a prior proceeding.'" *Kourtis v. Cameron*, 419 F.3d 989, 994 (9th Cir. 2005) (quoting *Shaw v. Hahn*, 56 F.3d 1128, 1131 (9th Cir. 1995)).   A federal court decision has preclusive effect where (1) the issue necessarily decided at the previous proceeding is identical to the one which is sought to be relitigated; (2) the first proceeding ended with a final judgment on the merits; and (3) the party against whom collateral estoppel is asserted was a party or in privity with a party at the first proceeding.  *Id.*; *see also United States v. Real Property Located at Section 18, etc.*, 976 F.2d 515, 518 (1992) (describing collateral estoppel elements as applied to a criminal case).

To determine the first prong, whether the issues are identical, the Court looks to a number of factors, including whether both suits involve application of the same rule of law, whether there is a substantial overlap in evidence or argument in both cases, whether pretrial preparation and discovery in the first action can reasonably be expected to have embraced the matter presented in the second action, and whether the claims are closely related.  *See Resolution Trust Corp. v. Keating*, 186 F.3d 1110, 1116 (9th Cir. 1999).  In *Gord*, the Ninth Circuit Court of Appeals was dealing with the same issues of fact and law as are present in this case, the only difference being that the facts and law in *Gord* were analyzed in the context of a criminal indictment as opposed to a civil action.  77 F.3d at 1193.  Ted Gord, as the manager of Thunderbird and husband of Elizabeth Gord, the sole owner of Thunderbird, fully litigated the issue of whether the cigarettes seized by the government were "contraband."  *Id.*  As a result, the Ninth Circuit in *Gord* made specific and necessary findings that the cigarettes were

1   contraband. *Id.* (holding that "even if the Thunderbird Trading Post is a tribal organization, the

2   unstamped cigarettes were contraband under the CCTA unless they were preapproved by the

3   Washington Department of Revenue and were sold to Native Americans."). Therefore, both suits

4   involve the application of the same rule of law as applied to the same cigarettes that are at issue here.

5         The second prong, whether the first proceeding ended with a final judgment on the merits, is

6   satisfied. The Ninth Circuit, after considering all the arguments, decided on the merits that the

7   cigarettes seized by the federal government were indeed contraband if they were not preapproved. *Id.*

8   at 1193-94.

9         The third prong, whether the parties are in privity with each other, is a more difficult question.

10   Privity is a legal conclusion "designating a person so identified in interest with a party to former

11   litigation that he represents precisely the same right in respect to the subject matter involved." *Kourtis*,

12   419 F.3d at 996 (internal quotation omitted). To bind litigants to a judgment rendered in an earlier

13   litigation to which they were not parties and in which they were not adequately represented violates the

14   Due Process Clause. *Id.* (citing *Richards v. Jefferson County*, 517 U.S. 793 (1996)). In order for

15   Thunderbird to have been "virtually" represented by Ted Gord in the previous action, there must be "a

16   close relationship, substantial participation, and tacit maneuvering . . . [as well as] identity of interests

17   and adequate representation." *Id.* (citing *Irwin v. Mascott*, 370 F.3d 924, 930 (9th Cir. 2004)) (internal

18   quotations omitted). Here, Ted Gord had strong incentive to represent the interests of Thunderbird

19   because he faced conviction and a possible prison sentence if the cigarettes were found to be

20   contraband. Consequently, Ted Gord fully and vigorously litigated the issue of contraband cigarettes

21   because he had a liberty interest at stake. Ted Gord and Thunderbird had an identical interest in the

22   criminal action: that of the status of the cigarettes. Further, Ted Gord had a close relationship with

23   Thunderbird as its manager and as the husband of its owner, Elizabeth Gord. Dkt. 90-5, at 1-3.

24   Elizabeth Gord was intimately involved in the *Gord* criminal action, agreeing to be held jointly liable

25   and agreeing to pay $100,000 of the $500,000 penalty. *Id.*, at 6, 8. Ted Gord's plea agreement was

26   specifically conditioned on the government's promise not to prosecute Elizabeth Gord. *Id.*, at 6. Last,

27   there is no allegation of inadequate representation. Given the totality of circumstances, Ted Gord

28   "virtually" represented Thunderbird in the *Gord* criminal action as to the matter of the status of the

cigarettes; therefore, Thunderbird and Ted Gord have privity concerning whether the seized cigarettes were contraband under Washington law and the CCTA.

All three prongs of collateral estoppel are met. Therefore, Plaintiff should be collaterally estopped from arguing that the seized cigarettes were not contraband. However, even if collateral estoppel does not apply in this instance, Plaintiff is not entitled to the proceeds from the sale of the cigarettes because the cigarettes are contraband under federal and state law.

### C.   SEIZURE OF CIGARETTES UNDER THE CONTRABAND CIGARETTE TRAFFICKING ACT

#### 1.   Plaintiff's Arguments

The Plaintiff argues that summary judgment is proper in this case because the seized cigarettes are not contraband and are therefore not subject to forfeiture. Dkt. 89-2, at 3-4. Plaintiff points to certain language under the Revised Code of Washington and the Washington Administrative Code as supporting its position. First, Plaintiff argues that RCW § 82.24.050 permits Indian tribal organizations to import unstamped cigarettes from out of state wholesalers who are not licensed by Washington. *Id.*, at 4. The Plaintiff states that RCW § 82.24.050 "specifically authorizes 'Indian tribal organizations' to possess unstamped cigarettes," and that cigarettes shipped from out of state wholesalers are not specifically regulated because there is no "regulation nor mechanism existing for preapproval of cigarettes imported from out of state wholesalers . . . ." *Id.*, at 4-5. Plaintiff supports its position by citing the opinion of Judge Quakenbush in *U.S. v. Brigman*, 874 F. Supp. at 1129. *Id.* In *Brigman*, Judge Quackenbush stated that this section "can only be read as presupposing that the Washington retailers may be obtaining cigarettes from distributors who are not licensed Washington wholesalers." *Id.*, at 4 (citing *Brigman*, 874 F. Supp at 1129).

Further, Plaintiff argues that WAC 458-20-192, the "single administrative regulation governing 'Indians and Indian tribes' regarding the cigarette tax, requires Indians to acquire unstamped cigarettes from Washington licensed wholesalers" but it "does not address the possibility of imported unstamped cigarettes from out of state wholesalers not licensed by Washington." *Id.*, at 4. Plaintiff argues that because the unstamped cigarettes seized by the federal government were imported from out of state wholesalers, the "preapproval" regulation does not apply and the cigarettes are not contraband. *Id.* Moreover, Plaintiff argues that WAC 458-20-192 and RCW § 82.24.050 are at odds, and, as an

1  "administrative rule is subservient to any statute to the contrary," the Court should give effect only to

2  RCW § 82.24.050.  *Id.*, at 5-6.

3                              2.     *Defendants' Arguments*

4          The Department of Revenue responds to Plaintiff's arguments by stating that under both federal

5  and state law, the unstamped cigarettes confiscated from Thunderbird were contraband, and therefore

6  Thunderbird has no right to re-claim the profit from the sale of the cigarettes.  Dkt. 90-1, at 6.  First,

7  the Department of Revenue points to the CCTA, 18 U.S.C. § 2341 *et seq.*  *Id.*, at 7.  The Department

8  of Revenue argues that, because the cigarettes seized by the United States fit within the CCTA's

9  definition of contraband cigarettes, the CCTA applies and the cigarettes are contraband.  *Id.*  The

10  Department Revenue further asserts that, to the extent Plaintiff attempts to argue that the CCTA does

11  not apply, Plaintiff's arguments are invalid because the Ninth Circuit has specifically rejected those very

12  arguments.  *Id.*; *United State v. Baker*, 63 F.3d 1478, 1484 (9th Cir. 1995).  The Department of

13  Revenue asserts that the *Baker* court rejected arguments that the CCTA does not apply to Indians, that

14  the CCTA violates the Treaty of Medicine Creek, and that legislative history evidenced congressional

15  intent to exempt Indians.  Dkt. 90-1, at 7 (citing *Baker*, 63 F.3d at 1484-86).

16          Second, the Department of Revenue points to Washington law, which imposes a cigarette tax

17  on the sale, use, consumption, handling, possession or distribution of all cigarettes; the state collects

18  this tax through a stamp system, requiring a cigarette stamp on every package of cigarettes sold in the

19  state.  *Id.* (citing RCW §§ 82.24.030, .080).  The Department of Revenue argues that Plaintiff's

20  cigarettes, which were found unstamped and had not been pre-approved by the Department of

21  Revenue, were subject to seizure and forfeiture and "shall be deemed contraband subject to seizure and

22  sale."  *Id.* (citing RCW §§ 82.24.130(1)(a), .250).  The Department of Revenue points to two cases to

23  uphold its interpretation of Washington law.  First, the Department of Revenue points to *Baker*, 63

24  F.3d at 1486-87, where the court concluded that any unstamped cigarettes brought into Washington

25  for the purposes of sale to Indians and which are not preapproved are subject to forfeiture.  *Id.*  Second,

26  the Department of Revenue cites to *Gord*, 77 F.3d at 1194, where the Ninth Circuit confirmed and

27  applied the holding in *Baker*.

28          The Federal Defendants make many of the same arguments as the Department of Revenue.  See

1   Dkt. 91-1.  In response to Plaintiff's argument that unstamped cigarettes need not be preapproved

2   when they are imported from out of state wholesalers, the Federal Defendants assert that the case cited

3   by Plaintiff in support of its proposition, *Brigman*, 874 F. Supp. 1125, has been subsequently overruled

4   by the Ninth Circuit in *Baker*, 63 F.3d at 1484.  *Id.*, at 4.

5                    *3.      Federal and State Law Regulating Cigarettes*

6           Under the CCTA, it is "unlawful for any person knowingly to ship, transport, receive, possess,

7   sell, distribute, or purchase contraband cigarettes."  18 U.S.C. § 2342.  Under the statute, the term

8   "contraband cigarettes" means a "quantity in excess of 60,000 cigarettes which bear no evidence of the

9   payment of applicable State cigarette taxes in the State where such cigarettes are found . . . ."  18

10  U.S.C.A. § 2341.  "A violation of the state cigarette tax law is a predicate to a CCTA violation."

11  *Gord*, 77 F.3d at 1193.  Under Washington State law, cigarette packages generally must bear stamps

12  proving payment of taxes.  RCW § 82.24.020-.050.  With few exceptions, unstamped cigarettes that

13  are "held, owned or possessed by any person," are subject to "seizure and forfeiture."  RCW §

14  82.24.130.

15          One of the exceptions to RCW § 82.24.130 is that "those articles intended for sale to qualified

16  purchasers may, under the rules adopted by the department of revenue, be retained by federal

17  instrumentalities and Indian tribal organizations, without affixing the stamps . . . ."  RCW § 82.24.050.

18  The "rules adopted by the department of revenue" are found in Washington's administrative code,

19  WAC 458-20-192.  "[T]o ensure only Indians take advantage of the tax exemption, Washington limits

20  the quantity of unstamped cigarettes that may be delivered to the reservations."  *Baker*, 63 F.3d at 1486

21  (citing WAC 458-20-192).  According to the code, "[d]elivery or sale and delivery by any person of

22  unstamped cigarettes to Indians or tribal vendors for sale to qualified purchasers may be made only in

23  such quantity as is approved in advance by the department of revenue."  WAC 458-20-192; *see Gord*,

24  77 F.3d at 1193.  Any cigarettes that are unstamped and for which pre-approval has not been obtained

25  are considered contraband. WAC 458-20-192 ("Any delivery, or attempted delivery, of unstamped

26  cigarettes will result in the treatment of those cigarettes as contraband and subject to seizure . . . .");

27  *Baker*, 63 F.3d at 1487.  The parties do not dispute that the cigarettes seized in this case were

28  unstamped and not preapproved by the Department of Revenue.

1    The Plaintiff argues that the "preapproval requirement of W.A.C. 458-20-192 does not apply

2    when cigarettes are imported under RCW § 82.24.050." Dkt. 89-2, at 3. This argument is without

3    merit. The Ninth Circuit has repeatedly held that, under Washington law, *any unstamped* cigarettes

4    which are in the possession of a tribal organization must have been pre-approved by the Department of

5    Revenue or are otherwise considered contraband. *Grey Poplars, Inc. v. One Million Three Hundred*

6    *Seventy One Thousand One Hundred Assorted Brands of Cigarettes*, 282 F.3d 1175, 1178 (9th Cir.

7    2002) ("[B]ecause Washington law requires that cigarettes destined for sale to Indians be pre-approved

8    by the Washington State Department of Revenue, any cigarettes without such pre-approval are

9    considered contraband under federal law if the quantity requirements are met."); *Yakima Indian Nation*

10   *v. Wash. Dept. of Revenue*, 176 F.3d 1241, 1244 (9th Cir. 1999) (finding that, under Washington law,

11   because unstamped packages of cigarettes seized from the Yakima Indian Nation were contraband

12   subject to seizure and sale, Washington State had the power to sell the cigarettes and retain the auction

13   proceeds); *Gord*, 77 F.3d at 1194; *Baker*, 63 F.3d at 1486-87; *United States v. Fiander*, 401 F. Supp.

14   2d 1136, 1139 (2005) (finding that "a tribal organization that merely possesses unstamped cigarettes

15   absent preapproval by the Department of Revenue violates the Washington cigarette tax statute.").

16   This binding case law necessarily invalidates Plaintiff's arguments. It does not matter whether

17   the cigarettes are imported from out of state wholesalers or whether, as Plaintiff claims (without

18   substantiation), there "is no regulation nor mechanism in place for such [out of state wholesaler]

19   preapproval." Dkt. 89-2, at 4. The court in *Gord* was faced with an identical fact pattern, arising out

20   of the same transaction as this case, and the court there held that a mere possession of unstamped, non-

21   approved cigarettes by an Indian tribal organization constituted a violation of Washington law and,

22   therefore, a violation of the CCTA. *Gord*, 77 F.3d at 1194; *see also Baker*, 63 F.3d at 1486-87.

23   Moreover, the courts' decisions in *Baker* invalidated the district court's decision in *Brigman*, the case

24   Plaintiff primarily relies upon (Dkt. 89-2). The court in *Baker* noted the following:

25       We disagree with *United States v. Brigman*, 874 F. Supp. at 1128-1131, which
         concluded that the severed codefendants who engaged in the same activities as the
26       defendants in this case, did not violate Washington law. *Brigman* is correct that under
         Washington law, "tribal Indians are entitled to have unstamped cigarettes in their
27       possession for consumption by and resale to reservation Indians." *Id.* at 1130. The
         defendants and the severed codefendants violated the law, however, by not obtaining
28       preapproval for their unstamped cigarettes. *Brigman* did not consider the preapproval
         requirement, perhaps because the government in that case conceded "there is no

[Revised Code of Washington] or [Washington Administrative Code] provision prohibiting Indians from buying unstamped cigarettes out of state and bringing them into Washington." *Id.* at 1128.

63 F.3d at 1487 n.9.  Therefore, because all unstamped cigarettes in the possession of any Indian retailer in must be preapproved or are otherwise considered contraband under Washington law, the cigarettes in this case are contraband subject to seizure and forfeiture because they were not stamped, were not preapproved.  RCW § 82.24.130.  Further, because the quantity of cigarettes possessed by the Defendant exceeded 60,000, its activities also violated the CCTA.  18 U.S.C. § 2342.

### D.   PLAINTIFF'S STATUS AS A TRIBAL ORGANIZATION IS NOT DETERMINATIVE

Plaintiff also argues that its status as an Indian tribal organization shields it from WAC 458-20-192 and authorizes it "to import unstamped cigarettes from out of state wholesalers not licensed by Washington . . . without necessity of preapproval."  Dkt. 89-2, at 6.  Plaintiff argues that it qualifies as an Indian tribal organization under the rule stated in *Tonasket v. Washington*, 84 Wn.2d 164 (1974) and *Gord v. Washington Dept. of Revenue*, 50 Wn. App. 646 (1987).  While the parties contest whether Plaintiff is an Indian tribal organization (Dkt. 89-2, st 6; Dkt. 94, at 10; Dkt. 90, at 9-10), Plaintiff's status as an Indian tribal organization is not outcome determinative because the Ninth Circuit has already considered this argument and has rejected it.  *Baker*, 63 F.3d at 1488.  "Contrary to the defendants' contention . . . . the [Washington Supreme Court] explicitly recognized that Washington Administrative Code § 458-20-192 'require[d] Indian vendors to seek the advance approval of the Department' of Revenue before importing unstamped cigarettes into the State."  *Id.* (citing *Gord v. Dep't of Revenue*, 50 Wn. App. 646, 683 (1987)).  Further, it is settled law that the CCTA applies to Indians on reservations.  *Greys Poplars, Inc.*, 282 F.3d at 1177 (holding that the "CCTA is a federal statute of general applicability and it applies equally to Indians, even on the reservation, as it does to others.").  "[E]ven if the Thunderbird Trading Post is a tribal organization, the unstamped cigarettes

were contraband under the CCTA unless they were preapproved by the Washington Department of Revenue and were sold to Native Americans." *Gord*, 77 F.3d at 1194.  Therefore, given the facts of this case, Plaintiff's alleged status as a tribal organization is not determinative, and it matters not whether Thunderbird qualifies as an Indian tribal organization.

### E.    ULTRA VIRES

Plaintiff argues that WAC 458-20-192 is ultra vires because, first, it exceeds the "prohibition to tax cigarettes consumed by Native American Indians in reservations." *Id.*, at 7.  Second, Plaintiff argues that the administrative code is ultra vires because it exceeds the policy mandated by the Washington legislature in RCW § 82.24.030, which states that the intent and purpose of the legislature was that a tax be imposed at the time and place of the first taxable event occurring within the state.  *Id.* Also, RCW § 82.24.600 prohibits the state from imposing a tax that is prohibited under the Constitution or laws of the United States.  *Id.*, at 7-8.

The Federal Defendants respond to Plaintiff's ultra vires argument by stating that it is "well settled that the State of Washington has the authority to tax and regulate the sale of cigarettes by Indians, even if the sale occurs on a reservation."  Dkt. 93, at 5; (citing *Oklahoma Tax Com. v. Citizen Band Potawatomi Indian Tribe*, 498 U.S. 505, 512 (1991); *Washington v. Confederated Tribes of Colville Reservation*, 447 U.S. 134, 150-51 (1980); *Moe v. Salish & Kootenai Tribes*, 425 U.S. 463 (1976)).  The Department of Revenue adds that RCW § 82.24.050 expressly provides the Department of Revenue the authority to make rules governing the conditions under which Indians may possess unstamped cigarettes.  Dkt. 94, at 11-12.

Plaintiff's arguments are without merit, and Plaintiff has failed to establish that WAC 458-20-192 is ultra vires.  "Comity considerations counsel against lightly concluding that the regulations were promulgated in contravention of the [Washington] statute that authorized their promulgation."

ORDER
Page - 13

*Covington v. Jefferson County*, 358 F.3d 626, 642 (9th Cir. 2004). Further, Plaintiff's arguments regarding the state's authority to tax Indians selling cigarettes are misplaced. The federal government did not seize the cigarettes because Thunderbird failed to pay state taxes; rather, the government seized the cigarettes because Thunderbird failed to obtain pre-approval for possession of unstamped, non-taxed cigarettes. And Washington's process of pre-approval has explicitly been upheld in *Baker*, 63 F.3d at 1486-87, and *Gord*, 77 F.3d at 1193-94.

## III.    CONCLUSION

All parties agree that all issues are to be decided on summary judgment. Dkt. 93, at 2; Dkt. 94, at 2; Dkt. 89-1; Dkt. 89-2, at 8. Plaintiff raises several issues in his Complaint regarding, among other things, treaty rights, a claim that the CCTA does not apply to Indian Tribal Organizations, and a claim that the Federal Defendants were without authority to enter the reservation and seize contraband items. Dkt. 68, at 5-12. However, Plaintiff has failed to brief the Court in its Motion for Summary Judgment (Dkt. 89-2) or its Response (Dkt. 95) as to these issues even though the issues were raised by Defendants (Dkt. 91, at 3, 10; Dkt. 90-1, at 11 ). Because Plaintiff has failed to pursue these allegations and claims, the Court presumes that Plaintiff has abandoned them. Therefore, to the extent that Plaintiff makes claims, if any, regarding these issues, Plaintiff's claims should be dismissed with prejudice and summary judgment for the Defendants should be granted.

Based on the foregoing, the cigarettes seized by the federal government were contraband and were subject to seizure and forfeiture. Plaintiff's Motion for Summary Judgment (Dkt. 89-2) should therefore be denied. The Department of Revenue's Motion for Summary Judgment (Dkt. 90-1) and the Federal Defendants' Motion for Summary Judgment (Dkt. 91-1) should be granted. Plaintiff's claim for the proceeds of the sale of the contraband cigarettes should be dismissed with prejudice, and the Department of Revenue may disburse the proceeds from the sale of the contraband cigarettes in

accordance with the law.

## IV.   ORDER

Therefore, it is hereby **ORDERED**:

• Plaintiff's Motion for Summary Judgment (Dkt. 89-2) is **DENIED**;

• The Department of Revenue's Motion for Summary Judgment (Dkt. 90-1) and the Federal Defendants' Motion for Summary Judgment (Dkt. 91-1) are **GRANTED** and Plaintiff's claims are **DISMISSED WITH PREJUDICE**;

• The Department of Revenue **SHALL DISBURSE THE PROCEEDS** from the sale of the contraband cigarettes in accordance with the law;

• Accordingly, the Pretrial Conference, trial date, and all other scheduled deadlines set forth in the Second Minute Order Rescheduling Trial and Pretrial Dates (Dkt. 83) are **STRICKEN**;

• The Clerk of the Court is instructed to send uncertified copies of this Order to all counsel of record and to any party appearing *pro se* at said party's last known address.

DATED this 16th day of April, 2007.

Robert J. Bryan
United States District Judge

ORDER
Page - 15